## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TERRELL WILSON,                    :
    Plaintiff                          :
                                       :        No. 1:18-cv-1965
    v.                                 :
                                       :        (Judge Rambo)
WARDEN EBBERT, *et al.*,            :
    Defendants                         :

## MEMORANDUM

## I.    BACKGROUND

This case was initiated by the filing of a complaint pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), in Civil Action No. 18-716 by *pro se* Plaintiffs Camden Barlow, Christopher Alvarez, Justin Haynes, Darryl Taylor, Tabarus Holland, Terrell Wilson ("Wilson"), Tony C. Knott, Agustin Argueta, Douglas Piggee, and Nathan A. Railey, all of whom were incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania ("USP Lewisburg") at that time.  (Doc. No. 1.)  In that complaint, Plaintiffs alleged that Defendants had violated their rights under the Equal Protection Clause of the Fourteenth Amendment, their First Amendment rights to access the courts, and their First Amendment rights regarding mail.  Subsequently, Doreteo Garcia, Juan Carlos Valles, and David Jackson were added as Plaintiffs.  *Barlow v. Ebbert*, Civ. A. No. 17-716 (M.D. Pa.) (Doc. No. 28).  On July 24, 2018, the Court dismissed Plaintiffs' Equal Protection claim and their access to the courts claim and directed service of

their First Amendment enhanced mail restriction claim.  *Id.* (Doc. Nos. 38, 39).  On

October 10, 2018, the Court granted Plaintiff Railey's motion to sever and directed

that each individual Plaintiff file an amended complaint under a separate civil action

number by November 9, 2018.  *Id.* (Doc. Nos. 89, 90).

Wilson filed his amended complaint on October 22, 2018.  (Doc. No. 10.)[1]

He also filed a motion for summary judgment (Doc. No. 11) and brief in support

(Doc. No. 12).   In his amended complaint, Wilson alleges that Defendants have

violated his First Amendment rights by subjecting him to enhanced mail monitoring.

He contends that sixty (60) pictures that were mailed to him were destroyed instead

of being placed in his property.  (Doc. No. 10 at 3.)  Wilson seeks injunctive relief

as well as compensatory and punitive damages.  (*Id.* at 4-5.)

On November 5, 2018, Defendants Warden David J. Ebbert ("Ebbert"),

Special Investigative Services ("SIS") Officer Buebendorf ("Buebendorf"), and

Officer/Counselor Tharp ("Tharp") filed a motion for extension of time to respond

to Wilson's amended complaint and motion for summary judgment.  (Doc. No. 13.)

The next day, Wilson filed a motion for preliminary injunction (Doc. No. 14) and

brief in support (Doc. No. 15).  By Order entered on November 8, 2018, the Court

dismissed Defendant Tharp from this action because Wilson had not named him as

---

[1] The document numbers from henceforth refer to filings in the instant case.

a Defendant in his amended complaint. Instead, Plaintiff had added Defendant Gass ("Gass"). (Doc. No. 16.) The Court also granted Defendants' motion for an extension of time and directed them to respond on or before January 4, 2019. (*Id.*)

Subsequently, Wilson filed a motion to dismiss Gass and Williams as Defendants. (Doc. No. 18.) Defendants Buebendorf and Ebbert (hereinafter "Defendants") filed a brief in opposition to Wilson's motion for preliminary injunction on November 20, 2018. (Doc. No. 21.) On November 28, 2018, the Court granted Plaintiff's motion to dismiss insofar as Defendant Gass was dismissed from this action. (Doc. No. 22.) The Court noted that Williams had never been a named Defendant and therefore there was no need for Court action to dismiss him. (*Id.*) Wilson filed his reply brief regarding his motion for preliminary injunction on December 3, 2018. (Doc. No. 23.)

On February 7, 2019, Defendants filed a motion to dismiss and/or motion for summary judgment (Doc. No. 24) and motion for an extension of time to respond to Wilson's motion for summary judgment (Doc. No. 25). By Order entered that same day, Magistrate Judge Carlson granted the motion for an extension of time. (Doc. No. 26.) On February 21, 2019, Defendants filed a motion to exceed page limitations (Doc. No. 27), a brief in support of that motion (Doc. No. 28), a statement of facts (Doc. No. 29), and brief in support of their motion to dismiss and/or motion for

summary judgment (Doc. No. 30).  By Order entered that same day, Magistrate Judge Carlson granted the motion to exceed page limitations.  (Doc. No. 31.)

On February 26, 2019, Magistrate Judge Carlson entered a Report and Recommendation (Doc. No. 32), recommending that Wilson's motion for summary judgment be denied.  On March 6, 2019, he entered a Report and Recommendation (Doc. No. 33), recommending that Wilson's motion for preliminary injunction be denied.  (Doc. No. 33.)  Wilson did not file objections to the Reports and Recommendations.  Wilson filed a brief in opposition to the motion to dismiss and/or motion for summary judgment on March 13, 2019.  (Doc. No. 34.)  He included with his brief in opposition his own declaration (Doc. No. 34-1), a declaration from inmate Rohsaan Matthews (*id.*), and various documents (*id.*).  Defendants filed a reply brief, including supplemental declarations and exhibits, on March 27, 2019.  (Doc. No. 35.)

Subsequently, in an Order entered on April 2, 2019, the Court noted that Defendants' motion to dismiss and/or motion for summary judgment asserts, *inter alia*, that Wilson failed to properly exhaust his administrative remedies before filing this action.  Pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), the Court informed the parties that it would consider the exhaustion issue in the context of summary judgment, and by doing so, would consider matters outside the

pleadings in its role as factfinder.  (Doc. No. 36.)  Accordingly, the Court directed Defendants to, within fourteen (14) days, file an amended or supplemental brief and statement of material facts "to further address the issue of whether Plaintiff has exhausted his administrative remedies and present any additional materials pertinent to the issue to the extent they have not already done so." (*Id.* at 1.)  The Court directed Wilson to file a brief in opposition within twenty-one (21) days from the date that Defendants filed their amended or supplemental materials.  (*Id.* at 2.)  The Court directed Wilson to "specifically address the issue of administrative exhaustion and submit materials and documents pertinent to the issue." (*Id.*)  The Court also directed him to "file a statement of material facts specifically responding to the numbered paragraphs in Defendants' statements." (*Id.*)  That same day, the Court also adopted Magistrate Judge Carlson's March 6, 2019 Report and Recommendation and denied Wilson's motion for a preliminary injunction.  (Doc. No. 37.)

On April 12, 2019, Defendants filed a letter regarding the Court's April 2, 2019 Order.  (Doc. No. 38.)  In this letter, Defendants state that they "have reviewed their brief in support of their motion to dismiss and/or motion for summary judgment and their statement of material facts previously filed." (*Id.*)  They "believe they have fully stated and supported their position on the exhaustion issue in those documents."

(*Id.*)  Accordingly, "Defendants will not avail themselves of the opportunity to file a supplemental memorandum and statement of material facts but will instead rely on the papers previously filed."  (*Id.*)

Given Defendants' letter and decision to not file supplemental materials regarding the issue of exhaustion, there will be no supplemental materials for Wilson to file a response to.  Accordingly, the motion to dismiss and/or for summary judgment is ripe for resolution.

## II.    STANDARD OF REVIEW

Defendants have filed a motion to dismiss and/or motion for summary judgment, arguing that: (1) they are entitled to qualified immunity; (2) Wilson failed to exhaust his administrative remedies; and (3) sovereign immunity bars Wilson's claims against them in their official capacities.

### A.    Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Under *Twombly* and *Iqbal*,

pleading requirements have shifted to a "more heightened form of pleading." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)).

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## B.     Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The United States Court of Appeals for the Third Circuit has held that filing a motion to dismiss, or in the alternative, a motion for summary judgment is sufficient "to place the parties on notice that summary judgment might be entered." *Hilfirty v. Shipman*, 91 F.3d 573, 578-79 (3d Cir. 1996).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if there is sufficient evidence with which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (citing *Anderson*, 477 U.S. at 248). A

factual dispute is "material" if it might affect the outcome of the case. *Anderson*, 477 U.S. at 248. In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the non-moving party. *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001); *White v. Westinghouse Elec, Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

A party seeking summary judgment always bears the initial burden of informing the court of the basis of its motion and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party then has the burden to "come forth with 'affirmative evidence, beyond the allegations of the pleadings,' in support of its right to relief." *U.S. Bank, Nat'l Ass'n v. Greenfield*, No. 1:12-cv-2125, 2014 WL 3908127, *2 (M.D. Pa. Aug. 11, 2014) (quoting *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004)). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," a court may grant summary judgment or consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2-3).

Furthermore, the Court is permitted to resolve cross-motions for summary judgment concurrently. *InterBusiness Bank, N.A. v. First Nat'l Bank of Mifflintown*,

318 F. Supp. 2d 230, 235 (M.D. Pa. 2004) (describing concurrent resolution of cross-motions for summary judgment as "a formidable task"); 10A Charles Alan Wright *et al.*, Federal Practice and Procedure § 2720 (3d ed. 1998). When doing so, the Court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion. Fed. R. Civ. P. 56; *Raymond Proffitt Found. v. U.S. Envtl. Prot. Agency*, 930 F. Supp. 1088, 1096 (E.D. Pa. 1996).

## III. STATEMENT OF MATERIAL FACTS[2]

---

[2] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. *Id.* Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. *See id.* Unless otherwise noted, the factual background herein is taken from Defendants' Rule 56.1 statement of material facts. (Doc. No. 29.)

Wilson did not file a response to Defendants' statement of facts in compliance with M.D. Pa. L.R. 56.1. Instead, he filed a brief in opposition, to which he attached his own declaration, a declaration from another inmate, and various documents. (Doc. No. 34.) He has also filed a verified amended complaint, which may be treated as an affidavit in opposition to summary judgment. *See Ziegler v. Eby*, 77 F. App'x 117, 120 (3d Cir. 2003) (noting that "the complaint was not verified, thereby precluding the District Court from treating it as the equivalent of an affidavit for purposes of Federal Rule of Civil Procedure 56(e)"); *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary judgment motion); *see also Boomer v. Lewis*, No. 06-850, 2009 WL 2900778, at *2 n.4 (M.D. Pa. Sept. 9, 2009) ("A verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge."). However, this Court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question." *Hammonds v. Collins*, Civ. No. 12-236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016) (citing *Brooks v. Am. Broad. Co.*, 999 F.2d 167, 172 (6th Cir. 1993)). Accordingly, unless otherwise noted, the Court deems the facts set forth by Defendants to be undisputed. *See* M.D. Pa. LR 56. 1; Fed. R. Civ. P. 56(e)(2).

Wilson has been housed in the Special Management Unit ("SMU") at USP Lewisburg since December 11, 2017.  (Doc. No. 29 ¶ 6.)

### A. Facts Regarding Mail Monitoring at USP Lewisburg

Bureau of Prisons ("BOP") policy "requires institution staff to open and inspect all incoming general correspondence and authorized staff to read such correspondence as often as necessary to maintain security or monitor a problem particular to a specific inmate."  (*Id.* ¶ 32.)  General correspondence includes incoming or outgoing mail sent or received via the United States Postal Service.  (*Id.* ¶ 32 n.4.)  It does not include mail such as legal mail.  (*Id.*)

Each federal institution is charged with establishing procedures for monitoring incoming and outgoing mail.  (*Id.* ¶ 33.)  Institutions have "the authority to give closer scrutiny to incoming and outgoing mail" of specific inmates, including inmates who "present management problems such as interference with or disruption of the orderly running of the institution so long as the monitoring procedures do not interfere with mail handling."  (*Id.*)  Established procedures are based upon "[t]he size, complexity, and security level of the institution, the degree of sophistication of the inmates confined, and other variables."  (*Id.* ¶ 35.)

Over the past two (2) years, the BOP "has seen a dramatic increase in actual and attempted introductions of synthetic narcotics (i.e. suboxone, K-2 spice,

synthetic marijuana) through incoming inmate correspondence." (*Id.* ¶ 36.) Narcotics are often "hidden under postage stamps, located in the seams of colored envelopes, or the entire correspondence itself is saturated in the narcotic." (*Id.* ¶ 37.) These narcotics are often sold to other inmates and are "known to cause erratic and often assaultive behavior in inmates, putting other inmates and BOP staff at grave risk." (*Id.* ¶¶ 40-41.)

Because of this threat, USP Lewisburg established enhanced mail monitoring procedures "for incoming general correspondence for inmates who have a documented history of attempting to or actually introducing narcotics while in BOP custody." (*Id.* ¶ 39.) Whether individual inmates should remain subject to these enhanced procedures is continually reviewed "to ensure the institution is utilizing the least restrictive means to address the specific safety and security concerns confronting it." (*Id.* ¶ 43.)

Under the enhanced procedures, the inmate's incoming general correspondence is processed through the mailroom and then forwarded to the assigned SIS technician. (*Id.* ¶ 47.) The mail is photocopied, and the inmate is provided the photocopy. (*Id.* ¶ 48.) Original correspondence is maintained by the technician for sixty (60) days before destruction. (*Id.* ¶ 49.) Any personal photographs contained in the correspondence are photocopied, and the photocopies

are provided to the inmate.  (*Id.* ¶ 50.)  Original photographs are then stored in the inmate's personal property, and he can access them after leaving USP Lewisburg. (*Id.* ¶ 51.)  Photocopies are generally made and provided to the inmate the same day the mail is received by the technician.  (*Id.* ¶ 52.)  These procedures are specific to USP Lewisburg "and do not 'follow' the inmate when he is transferred from USP Lewisburg to another federal prison."  (*Id.* ¶ 54.)

Wilson became subject to the enhanced mail monitoring procedures in May of 2018.  (*Id.* ¶ 55.)  Since then, "any photographs contained in his incoming general correspondence have been placed in his personal property."  (*Id.*)  When Wilson receives "incoming general correspondence containing photographs, he is provided with written notice that the photographs included with the correspondence have been placed in his personal property."  (*Id.* ¶ 56.)  No photographs have been destroyed. (*Id.* ¶ 57.)[3]  When Wilson receives mail marked as "special" or "legal" mail, it is not processed under the enhanced mail monitoring procedures.  (*Id.* ¶ 58.)  Instead, this mail "is processed by a member of Wilson's unit team who opens the mail in his presence to inspect it for contraband."  (*Id.* ¶ 59.)  After inspection, the unit team

---

[3] Wilson maintains that sixty (60) of his photographs were destroyed.  (Doc. No. 10 at 3.)

"then provides [Wilson] with the original piece of mail and a photocopy of the envelope it was sent it."  (*Id.* ¶ 60.)[4]

## B.    Facts Regarding Exhaustion

The BOP "has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment."  (*Id.* ¶ 7.)  First, an inmate must present his complaint to staff "on an Informal Resolution Attempt form commonly referred to as a BP-8."  (*Id.* ¶ 8.)  If informal resolution is not successful, the inmate may then submit a Request for Administrative Remedy (BP-9) to the Warden.  (*Id.* ¶ 9.)  "The deadline for completion of the BP-8 and submission of the BP-9 is twenty days from the date of the event which is the subject of the remedy." (*Id.* ¶ 10.)  The Warden has twenty (20) days to respond to the BP-9.  (*Id.* ¶ 11.)  If an inmate is unsatisfied with the Warden's response, he may file a Regional Administrative Remedy Appeal (BP-10) with the Regional Director within twenty (20) days from the date of the Warden's response.  (*Id.* ¶ 12.)  The Regional Director has thirty (30) days to respond.  (*Id.* ¶ 13.)  Finally, an inmate may appeal the Regional Director's response by filing a Central Office Administrative Remedy Appeal (BP-11) with the Central Office within thirty (30) days of the Regional Director's response.  (*Id.* ¶ 14.)  The Central Office has forty (40) days to respond.

---

[4] Wilson maintains that Defendant Buebendorf has opened special mail outside of his presence. (Doc. No. 10 at 3.)

(*Id.* ¶ 15.)  The Central Office appeal is the final appeal, and no appeal is fully exhausted "until it is decided on its merits by the BOP's Central Office."  (*Id.* ¶¶ 16-17.)  An administrative remedy may be rejected at any level if it was not properly or timely submitted.  (*Id.* ¶ 18.)  If rejected, the remedy is "returned to the inmate and the inmate is provided with a written notice explaining the reason for rejection." (*Id.*)  A rejection of a remedy is not a decision on the merits.  (*Id.* ¶ 20.)

The BOP maintains a computerized index of all remedies and appeals filed by all inmates.  (*Id.* ¶ 27.)  An "Administrative Remedy Generalized Retrieval provide[s] details concerning each remedy filed by the inmates including the administrative remedy ID number, the date the remedy was received, an abstract (description) of the issue(s) raised, the three-letter code of the facility where the event occurred, the date the remedy was responded to, the status code, and the status reason."  (*Id.* ¶ 28.)

Since his arrival at USP Lewisburg, Wilson has filed several administrative remedies.  (*Id.* ¶ 30.)  None of these relate to the enhanced mail monitoring procedures and restrictions.  (*Id.*)  Wilson has failed to exhaust any of the remedies that he has filed.  (*Id.* ¶ 31.)[5]

---

[5] As discussed *infra*, Wilson has submitted documents purporting to show that he did attempt to exhaust his administrative remedies regarding a grievance alleging that photographs were not placed with his personal property.  (*See* Doc. No. 34-1.)

## IV. DISCUSSION

Under the Prison Litigation Reform Act of 1996 ("PLRA"), a prisoner must pursue all available avenues for relief through the prison's grievance system before bringing a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997(e) provides, in relevant part "[n]o action shall be brought with respect to prison conditions under section 1983 of the Revised Statutes of the United States, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e). The exhaustion requirement is mandatory. *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *Booth*, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The Third Circuit has further provided that there is no futility exception to § 1997e's exhaustion requirement. *Nyhuis v. Reno*, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board administrative exhaustion by inmates who seek to pursue claims in federal court. *Id.* Additionally, courts have imposed a procedural default component on this exhaustion requirement, holding

that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding into federal court. *Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court"); *Perazzo v. Fisher*, No. 11-1505, 2012 WL 1964419, at *1 (M.D. Pa. May 31, 2012) (dismissing case for failure to exhaust administrative remedies where plaintiff indicated in the complaint that the grievance process was not complete but was at the "last stage"); *Jones v. Lorady*, No. 11-666, 2011 WL 2461982, at *3-4 (M.D. Pa. June 17, 2011) (dismissing prisoner complaint for failure to exhaust administrative remedies prior to initiating federal action). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal court. *See e.g., Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000); *Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000).

However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Warman*, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005). Nor can an inmate avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. *Warman*, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. *Casey v. Smith*, 71 F. App'x 916 (3d Cir. 2003); *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well

established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'") (citations omitted).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust can be excused. *See Ross v. Blake*, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation. *Id.* at 1860.

The Third Circuit recently joined other circuits to hold "that administrative remedies are not 'available' under the PLRA where a prison official inhibits an inmate from resorting to them through serious threats of retaliation and bodily harm." *Rinaldi v. United States*, 904 F.3d 257, 267 (3d Cir. 2018). To defeat a failure-to-exhaust defense based on such threats, "an inmate must show (1) that the

threat was sufficiently serious that it would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance and (2) that the threat actually did deter this particular inmate." *Id.* at 269.

Failure to exhaust is an affirmative defense that must be pled by the defendant. *Jones v. Bock*, 549 U.S. 199, 216 (2007). "In a motion for summary judgment, where the movants have the burden of proof at trial, 'they [have] the burden of supporting their motion for summary judgment with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'" *Foster v. Morris*, 208 F. App'x 174, 179 (3d Cir. 2006) (quoting *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003) (internal quotations omitted)). If "the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." *Id.* (quoting *Nat'l State Bank v. Fed. Reserve Bank of N.Y.*, 979 F.2d 1579, 1582 (3d Cir. 1992) (internal quotations omitted)).

In this matter, Defendants have submitted a declaration from E. Frymoyer, an Attorney Advisor at USP Lewisburg, as well as a copy of Wilson's Administrative Remedy Generalized Retrieval, to support their argument that Wilson has not exhausted his administrative remedies with respect to his claim. (*See* Doc. No. 29-1 at 44-50.) As noted above, since his arrival at USP Lewisburg, Wilson has filed

several administrative remedies, including one asserting that photographs were not placed with his personal property. (Doc. No. 29 ¶ 30.) Frymoyer declares, however, that Wilson failed to exhaust his remedies with respect to any of the grievances he has filed. (*Id.* ¶ 31.)

In response, Wilson has submitted documents purporting to show that he attempted to exhaust his administrative remedies with respect to his claim. These documents include his own declaration (Doc. No. 34-1 at 1-2), and completed administrative remedy forms (*id.* at 17-22.) Wilson asserts that on October 14, 2018, he submitted a BP-8 to Unit Manager Tharp, claiming that the photographs he had been receiving in the mail had not been placed with his personal property. (*Id.* at 1, 17.) On October 23, 2018, he received a denial of his administrative remedy from Mr. Konkle, Deputy Captain. (*Id.* at 1, 18.) Wilson filed a BP-9 appeal to Defendant Ebbert on October 31, 2018. (*Id.* at 1, 19.) On November 6, 2018, Defendant Ebbert denied his appeal. (*Id.* at 2, 20.) Wilson claims that on November 15, 2018, he filed a BP-10 appeal to the Regional Director. (*Id.* at 2, 22.) He asserts that he filed a BP-11 appeal to the Central Office on February 14, 2019 because he never received a response from the Regional Director and therefore considered the non-response to be a denial at that level. (*Id.* at 2, 21.)

Defendants, in their reply brief, assert that Wilson's claims that he attempted to exhaust his administrative remedies are false. (Doc. No. 35 at 1.) In support, Defendants submit a supplemental declaration from Frymoyer (Doc. No. 35-1 at 1-2, as well as an updated Administrative Remedy Generalized Retrieval (*id.* at 3-7.) These documents indicate that there is no record of the Regional Director receiving Wilson's BP-10 form dated November 15, 2018 and that there is no record of the Central Office receiving the BP-11 form dated February 14, 2019. (Frymoyer Decl. ¶¶ 5-6.) If the Regional Director and Central Office had received these forms, Wilson would have received receipts documenting such. (*Id.* ¶ 7.)

Moreover, the Regional Director has thirty (30) days to respond to an appeal; this time may be extended once by another thirty (30) days. (*Id.* ¶ 8.) The Central Office has forty (40) days to respond to an appeal; this time may be extended once by twenty (20) days. (*Id.*) Inmates are informed of these extensions in writing. (*Id.*) "If an inmate does not receive a response within the time allotted for reply, including an extension, the inmate may consider the absence of a response to be a denial at that level." (*Id.* ¶ 9.) Therefore, even if Wilson had submitted a BP-10 to the Regional Director, the Regional Director would have had until December 15, 2018 to respond. (*Id.* ¶ 10.) There is no record that Wilson received a written extension notice from the Regional Director. (*Id.*) Thus, if he had not received a response by

December 15, 2018, he could consider the absence of a response to be a denial by the Regional Director. (*Id.*) Wilson would then have had until January 14, 2019 to file a BP-11. (*Id.*) Wilson claims, however, that he did not file a BP-11 until February 14, 2019. (*Id.*) Thus, if he had filed a BP-11, it would not have been timely filed. (*Id.*)

After reviewing the parties' submissions, the Court agrees with Defendants that Wilson's purported documentary evidence is fabricated. "The fact that BOP has no records that corroborate [Wilson's] dubious assertion that he filed [BP-10 and BP-11 appeals] gives rise to substantial doubt about Wilson's claim that he . . . filed these administrative [appeals]." *Wills v. United States*, No. 3:13CV1787, 2015 WL 1333335, at *12 (M.D. Pa. Mar. 19, 2015). Moreover, Wilson has failed to provide copies of any receipts indicating that the Regional Director received his BP-10 form and that the Central Office received his BP-11 form. Quite simply, Wilson has provided nothing but his own self-serving allegations to support his claim that he tried to exhaust his administrative remedies.

Moreover, even if the Court were to believe that Wilson attempted to exhaust his remedies, Defendants would still be entitled to summary judgment. Wilson affirmatively claims that he filed a BP-11 on February 14, 2019, approximately ten (10) months after he and the other Plaintiffs initiated this action by filing their initial

complaint. As noted above, inmates must fully satisfy the administrative requirements of the grievance process **before** filing suit in federal court. *See Oriakhi*, 165 F. App'x at 993 (concluding that "a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court"). This Court has previously noted that "the PLRA rule requiring exhaustion would be circumvented by allowing prisoners to file a federal claim while simultaneously continuing through the administrative grievance process." *Jones*, 2011 WL 2461982, at *4 (citing *Nyhuis*, 204 F.3d at 67 n.12). Thus, Wilson's purported attempt to exhaust his administrative remedies after filing this action would not defeat Defendants' failure-to-exhaust defense.

Consequently, because Wilson has only come forth with self-serving allegations suggesting that he attempted to exhaust his administrative remedies, he has not refuted the defense that he has failed to properly exhaust his First Amendment claim regarding the enhanced mail monitoring procedures at USP Lewisburg. *See U.S. Bank, Nat. Ass'n v. Greenfield*, Civ. No. 12-2125, 2014 WL 3908127, at *2 (M.D. Pa. Aug. 11, 2014) (quoting *Pappas v. City of Lebanon*, 331

F. Supp. 2d 311, 315 (M.D. Pa. 2004)).  Accordingly, the Court will enter summary

judgment in favor of Defendants.[6]


## V.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss

and/or motion for summary judgment.  (Doc. No. 24).  The Court will also adopt

Magistrate Judge Carlson's Report and Recommendation (Doc. No. 32) and deny

Wilson's motion for summary judgment (Doc. No. 11).   An appropriate Order

follows.



s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge


Dated: April 16, 2019

---

[6] Given the Court's conclusion that Wilson did not exhaust his administrative remedies, the Court declines to address Defendants' alternate arguments that they are entitled to qualified immunity and that sovereign immunity bars any claims brought against them in their official capacities.